**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LIBERTY PHYSICAL MEDICINE AND REHABILITATION, P.C. and BENJAMIN CHANG., <br><br> Plaintiffs, <br><br> v. <br><br> JAMIE CHA, et. al, <br><br> Defendant. | Civil Action No.: 16-4883 (JLL) <br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of three separately-filed motions to dismiss this action. (*See* ECF Nos. 24, 37, 38).[1] Plaintiffs have opposed each of these motions (ECF Nos. 42, 47, 48) and Defendants have replied to same (ECF Nos. 44, 56, 57). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Court grants the motion to dismiss filed on behalf of Defendants Simon Cha, Helen Cha, Bruce Park, Yumin Management Corporation (New York), Yumin Management Corporation (New Jersey), and San Yoon Kim (ECF No. 24) (collectively, the "Multiple Defendants"), grants the motion to dismiss filed on behalf of Defendant Jamie Cha (together, with

---

[1] On October 5, 2016, a motion to dismiss was filed on behalf of Defendants Simon Cha, Helen Cha, Sang Yoon Kim, Bruce Park, Yumin Management Corporation (New York) and Yumin Management Corporation (New Jersey). (ECF No. 24). On October 31, 2016, Defendant TD Bank North, N.A. ("TD Bank") filed a separate motion to dismiss. (ECF No. 37). Lastly, Defendant Jamie Cha filed a motion to dismiss on November 1, 2016. Plaintiffs have opposed each motion (*See* ECF Nos. 42, 47, 48), and each Defendant has independently replied to Plaintiff's opposition (*See* ECF Nos. 44, 56, 57).

1

the Multiple Defendants, the "Moving Defendants") (ECF No. 38), and administratively terminates Defendant TD Bank, N.A.'s ("TD Bank") motion to dismiss (ECF No. 37) as moot.[2]

## I.   Background

Plaintiff Benjamin Chang, M.D. ("Dr. Chang") is a medical doctor who specializes in musculoskeletal disorders. (ECF No. 1, Complaint, "Compl." ¶ 3, 23). Dr. Chang's practice, Plaintiff Liberty Physical Medicine and Rehabilitation, P.C. ("Liberty") is a medical clinic operating out of Elmhurt, New York that treats patients suffering from back and neck pain, among other musculoskeletal conditions. (*Id.* ¶¶ 2, 23).

In 2008, Plaintiff Liberty engaged Defendant J. Cha as an independent contractor for the position of billing clerk. (*Id.* ¶ 24). In that capacity, J. Cha "was to submit bills to insurance companies and patients for payment; was to process and post payments from insurance companies into Liberty's billing software; was to receive, process, and deposit payments from insurance companies and patients into the official bank account for the medical practice; and was to account for bills out and payments received." (*Id.* ¶ 25). According to Plaintiffs, shortly after her relationship with Plaintiffs commenced, J. Cha began stealing checks made payable to Dr. Chang and Plaintiff Liberty. (*Id.* ¶ 27).

Specifically, Plaintiffs allege that in January 2009, J. Cha opened a bank account with Defendant TD Bank in the name of "Liberty Physical Med & Rehab, P.C." (*Id.* ¶¶ 28-29). The name of this account differs slightly from the full name of Plaintiff Liberty Physical Medicine and Rehabilitation, P.C. (*Id.* ¶ 29). Plaintiffs further allege that the address associated with the TD Bank account is, or had previously been, J. Cha's home address. (*Id.* ¶ 29). The only authorized signature on the TD Bank account was that of Jamie Cha, who was identified as President of

---

[2] Any reference herein to the "the Moving Defendants" excludes Defendant TD Bank.

"Liberty Physical Med & Rehab, P.C." (*Id.* ¶ 30). In total, Plaintiffs allege that from 2009 through 2015, Jamie Cha stole over 500 checks from Plaintiffs, amounting to $2,202,891.77, and deposited these checks into the TD Bank account. (*Id.* ¶ 35).

Plaintiffs claim that, with the allegedly stolen funds, Jamie Cha made numerous purchases. (*Id.* ¶ 40). For example, Jamie Cha allegedly leased a BMW vehicle and leased or purchased a Mercedes Benz vehicle and that she spent nearly $11,000 at Bloomingdales Department Stores. (*Id.*). Particularly relevant to the pending motions, Plaintiffs allege that from February 2011 through September 2014, Jamie Cha made a total of 34 wire transfers to two friends or relatives in Korea, Defendants Jee Hoon Choi and Eun Young Lee. (*Id.* ¶¶ 106-108). Against this backdrop, Plaintiffs assert claims against Defendant Jamie Cha for conversion, breach of fiduciary duty, breach of contract and civil conspiracy. (*Id.* at 17-29).

Plaintiffs also name TD Bank as a Defendant. According to Plaintiffs, TD Bank negligently permitted Defendant Jamie Cha to commit the above actions. (*Id.* ¶¶ 44-55). For example, Plaintiffs allege that TD Bank failed to do its due diligence in verifying the TD Bank account set up under the name of "Liberty Physical Med & Rehab, P.C." (*Id.*). Plaintiffs also blame TD Bank for failing to recognize that "more than one person/transferee/conspirator had access to the TD/Liberty Account at the same time" even though Defendant Jamie Cha was the only person with authorized access to the TD Bank account. (*Id* ¶ 55). Thus, Plaintiffs assert claims against TD Bank for conversion, aiding and abetting conversion, breach of fiduciary duty, negligence, Uniform Commercial Code violations, New Jersey Uniform Fiduciaries Law violations, and prima facie tort.

Currently pending before the Court are three motions to dismiss this matter. All of the Moving Defendants, with the exception of TD Bank, argue that this court lacks subject matter

jurisdiction to hear this case. (ECF No. 24-1 at 4-6; ECF No. 38-1). Plaintiffs oppose these motions, and Defendants have replied to same. These motions are now ripe for the Court's adjudication.

## II.  Discussion

Federal courts are courts of limited jurisdiction and thus, are permitted to adjudicate cases and controversies only as allowed under Article III of the United States Constitution. Art. III, § 2. Thus, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a court may dismiss an action for lack of subject matter jurisdiction.

In the Complaint, Plaintiffs plead that this matter is properly before this Court based upon federal question jurisdiction, 28 U.S.C. § 1331. (*See* Compl. ¶ 20). Specifically, Plaintiffs maintain that this action falls within the purview of the "Edge Act," an infrequently utilized federal statute, codified at 12 U.S.C. § 632. (*Id.*). In pertinent part, the Edge Act provides as follows:

> Notwithstanding any other provision of law, all suits of a civil nature at common law or in equity to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits.

12 U.S.C.A. § 632 (West). *Id.* In short, the Edge Act provides for federal question jurisdiction over: (1) any civil action, that; (2) involves a corporation organized under the laws of the United States—i.e., a federal bank; (3) where, generally stated, the action involves international banking or transactions. *See id.*; *see also Prudential Ins. Co. of America v. J.P. Morgan Securities, LLC*, 12-cv-3489, 2012 WL 6771977, *8 (D.N.J. Dec. 20, 2012). A civil action will meet the third requirement if it "aris[es] out of one of the following three circumstances: (1) "transactions

4

involving international or foreign banking"; (2) "banking in a dependency or insular possession of the United States, or; (3) "other international or foreign financial operations." 12 U.S.C. § 632.

Here, there is no dispute that the case at bar is a civil action involving a "corporation organized under the laws of the United States"—namely, TD Bank. Thus, the first two prongs of Edge Act jurisdiction are satisfied. Less clear, however, is whether the third prong of Edge Act jurisdiction is met. That is, the Parties dispute whether this action is sufficiently tied to international or foreign banking to fall within the purview of the Edge Act. Specifically, the parties dispute whether TD Bank—the only Edge Act corporation implicated in this lawsuit—is sufficiently linked to the international financial transactions to satisfy the third prong of the Edge Act.

In arguing for dismissal, the Multiple Defendants contend that Plaintiffs' claims pertaining to TD Bank, the only Edge Act corporation named in this action, are grounded in the Bank's negligence and/or recklessness in failing to identify the fraud being perpetrated by Defendant Jamie Cha, as opposed to any specific banking-related activity on the part of TD Bank. (ECF No. 24-1 at 5-6). Stated differently, the Multiple Defendants argue that "[a]lthough Plaintiffs allege that there were international transactions . . . , these transaction are not the gravamen of the acts purportedly giving rise to the complaint." (*Id.* at 6). Similarly, Defendant Jamie Cha maintain that the Complaint fails to sufficiently allege that TD Bank "has conducted transactions involving international or foreign banking" and that "the instant lawsuit arises out of such [international or foreign] transactions conducted by Defendant TD [Bank]." (ECF No. 38-1 at 1). That is, Jamie Cha explains that none of the alleged conduct that occurred overseas was committed by TD Bank. (*Id.* at 2). Rather, Jamie Cha notes that "there were credit/debit transactions made by some of the individual defendants in South Korea and Macau." (*Id.* at 5).

5

For their part, Plaintiffs reiterate their pleadings which reference international financial transactions. That is, they direct the Court to the following allegations, as pled in the Complaint:

- "Credit/debit charges were made on the TD/Liberty Account from multiple locations worldwide, including the U.S., South Korea, and Macau. The timing of such transactions makes it clear that more than one person/transferee/conspirator had access to the TD/Liberty Account at the same time. While Defendant Cha was the only person with authorized access to the fake TD/Liberty Account, it is clear that TD knew multiple people had access at the same time. In fact, many of the transaction [sic] occurred when Defendant Cha was supposedly working in NY." (Compl. ¶ 55).

- "For instance, on September 14, 2009, there were fifteen uses of the Account's check card. One was in Georgia. Five were in or around Bergen County, New Jersey. Four were in Central Valley, New York. One was in Illinois. One was in California. Three were in Seoul, Korea." (*Id.* ¶ 125).

- "Between February 2011 and June 2013, Cha made 21 wire transfers to Jee Hoon Choi in Korea totaling $93,360." (*Id.* ¶ 106).

- "Between January 2013 and September 2014, Cha made 13 wire transfers to Eun Young Lee in Korea totaling $49,000." (*Id.* ¶ 107).

- "On information and belief, Jee Hoon Choi and Eun Young Lee were either friends or close relatives of Cha, knew of Cha's circumstances, including her job, and among other things should have surmised Cha's income based on Cha's job." (*Id.* ¶ 108).

(ECF No. 42 at 13-17). According to Plaintiffs,

> the fraudulent wire transfers and debit withdrawals abroad were facilitated by TD Bank's negligence and/or reckless disregard in allowing Defendant Jamie Cha to perpetrate her fraud which is the crux of this dispute. Defendant Jamie Cha's collusion with international third parties and her distribution of the stolen loot to her co-conspirators abroad by means of banking transactions involving the fake account at TD Bank establishes that this civil action 'arises out of international or foreign banking transactions' for purposes of the Edge Act.

(*Id.* at 13).

The question raised by the Moving Defendants' motions to dismiss, and Plaintiffs' opposition to same, is whether the Edge Act's requirement of an element of foreign banking or transactions is satisfied where the Edge Act corporation's only tie to such a transaction stems from

6

that corporation's alleged negligence in permitting the main perpetrator to open a fraudulent bank account in the United States and its alleged failure to recognize fraud, some of which was perpetrated internationally. This Court holds that Edge Act jurisdiction does not extend to these facts.

At the outset, the Court notes that neither Defendants nor Plaintiffs have directed this Court to any case from either the United States Supreme Court or the Third Circuit addressing the scope of the Edge Act's third prong, nor is this Court aware of the existence of any such cases.[3] That said, this Court finds a recent Second Circuit case, *American Intern. Group, Inc. v. Bank of America Corp.*, to be instructive on this issue. In said case, the Second Circuit opined upon Congress's objectives in enacting the Edge Act:

> [T]he Edge Act was designed to authorize the creation of federally chartered banks which could compete more effectively in offshore banking operations than banks burdened by state-imposed regulations. The later-added provision for federal court jurisdiction was designed to assure such banks of access to federal courts to better ensure their freedom from restrictions that might be imposed by state regulators. *As the activity sought to be encouraged and facilitated by the Act is the engagement by Edge Act banks in offshore banking transactions*, it makes perfect sense that the ambiguous statute assuring them access to federal courts be understood to give that access in suits relating to the activities the Act seeks to promote, to wit, *the banks' engagement in offshore banking transactions*.

712 F.3d 775, 781 (2d Cir. 2013) (emphasis added). Guided by its understanding of this Congressional intent, the Second Circuit closely analyzed the third prong of Edge Act jurisdiction—that is, the requirement that the matter

> aris[e] out of transactions involving [(1)] international or foreign banking, or [(2)] banking in a dependency or insular possession of the United States, or [(3)] out of other international or foreign financial operations, *either directly or through the agency, ownership, or control of branches or local institutions* in dependencies or insular possessions of the United States or in foreign countries . . . .

---

[3] The Multiple Defendants erroneously classify the *Prudential* case a "Third Circuit" decision. (*See* ECF No. 24-1 at 4, 6). That opinion, however, is an unpublished opinion hailing from the federal district court of New Jersey.

7

12 U.S.C. § 632 (italics added). The Circuit Court applied principles of statutory and grammatical construction to find that the above-italicized language modifies each of the three categories of international transactions to which the Edge Act provides jurisdiction. *Am. Int. Group, Inc.*, 712 F.3d at 781-84. That is, the above-italicized language "serves the purpose of clarifying that § 632's grant of federal jurisdiction applies not only when the federally chartered corporation itself engaged in the offshore banking transaction, but also when that transaction was done by the corporation's foreign or territorial agency, branch or subdivision." *Id.* at 781. The corollary to the Second Circuit's conclusion—a conclusion which this Court finds persuasive—is that the Edge Act does not confer federal jurisdiction over an action involving foreign transactions or banking that was committed by a defendant *other than* the Edge Act corporation or that corporation's related entity. *See id.* at 784 ("[Section] 632 provides that in order for its grant of federal jurisdiction . . . to apply, the suit must have a federally chartered corporation as a party, and the suit must arise out of an offshore banking or financial transaction of *that federally charted corporation.*") (emphasis added); *see also Prudential*, 2012 WL 6771977, at *9 (". . . Edge Act jurisdiction does not arise 'merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties.'") (quoting *Societe d 'Assurance de l'Est SPRL v. Citigroup Inc.*, 2011 WL 4056306 (S.D.N.Y. Sept.13, 2011)).

Here, TD Bank is not alleged to have engaged in a single offshore banking transaction. Rather, the Complaint charges TD Bank with, among other things, negligence in permitting Defendant Jamie Cha to open an account, which, according to Plaintiffs, proximately caused the fraudulent international transfer of funds. Under Plaintiffs' logic, Edge Act jurisdiction would rest upon the international conduct of individual defendants who were not contemplated during the drafting of the Edge Act. This Court is not permitted to rewrite the Edge Act in such a way.

Accordingly, the Court agrees with the Moving Defendants that the Edge Act's requirement that the suit involve an element of international banking or transactions is not satisfied by the facts of this case. The Court will therefore grant the Moving Defendants' motion to dismiss for lack of subject matter jurisdiction. Moreover, because Plaintiffs have not offered any alternative bases for federal court jurisdiction, this Court will dismiss this matter with prejudice.

### III. Conclusion

For the reasons stated herein, this Court grants the motions to dismiss filed on behalf of the Multiple Defendants (ECF No. 24) and Defendant Jamie Cha (ECF No. 38), administratively terminates the motion to dismiss filed on behalf of Defendant TD Bank (ECF No. 37), and dismisses this matter with prejudice. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: January 3rd, 2017

_____
JOSE L. LINARES, U.S.D.J.

Accordingly, the Court agrees with the Moving Defendants that the Edge Act's requirement that the suit involve an element of international banking or transactions is not satisfied by the facts of this case. The Court will therefore grant the Moving Defendants' motion to dismiss for lack of subject matter jurisdiction.

### III.   Conclusion

For the reasons stated herein, this Court grants the motions to dismiss filed on behalf of the Multiple Defendants (ECF No. 24) and Defendant Jamie Cha (ECF No. 38), administratively terminates the motion to dismiss filed on behalf of Defendant TD Bank (ECF No. 37), and dismisses this matter. Because the Court dismisses this matter for lack of subject matter jurisdiction, such dismissal must be without prejudice to permit Plaintiffs to refile this action in an appropriate jurisdiction. *See In re Orthopedic "Bone Screw" Prods. Liability Litig.*, 132 F.3d 152, 155-56 (3d Cir. 1997) ("If a case, over which the court lacks subject matter jurisdiction, was originally filed in federal court, it must be dismissed. . . . The disposition of such a case will, however, be without prejudice."); *see also Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) ("A dismissal for lack of prejudice is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is 'without prejudice.'"). An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:   January 3 ~~3~~, 2017

JOSE L. LINARES, U.S.D.J.

9